Kenneth S. Hixson, Judge, dissenting. ■I join Judge Glover’s dissent and write separately to emphasize the unsettling precedent that this case creates. Bad timing should not -cost a parent her child. • If M.H. had not been visiting her noncustodial putative father and her half-siblings on the- very weekend that DHS investigated her father, M.H. would not have been caught up in the DHS investigation. • If M.H. had been visiting her father a week earlier and even if DHS had been summoned, M.H.’s grandmother would have been residing in a government-housing apartment in Delaware, Arkansas—surely satisfactory to DHS. • Bad timing. Grandma Tapp took in two-year-old M.H. because M.H.’s mother was. unfit. Grandma Tapp informally took care of M.H. from age two. to age seven when Grandma Tapp formally was granted custody of M.H. From age two to age fourteen, there is no evidence in the record that Grandma Tapp neglected M.H. Then, on the weekend that Grandma Tapp was moving out of the government-housing apartment and renovating a trailer into a residence, she allowed M.H. to visit her father and half-siblings. -On that very weekend, the sheriff went to the father’s residence on a domestic-violence call, and M.H. was caught up in the whirlwind of the DHS investigation. While the condition of the 1^father’s residence was deplorable, even DHS admitted that Grandma Tapp had nothing to do with it. Now, because M.H. was visiting her father apd her four half-siblings when the DHS investigation commenced, she is in foster care separated from the only mother she has ever known. This is not a case of dependency-neglect. I would reverse. Furthermore, in my view, this case has a potentially far-reaching impact. The bottom line in this case is that a grandmother lost custody of her granddaughter to DHS because the grandmother did not perform her own previsitation inspection on her son’s home to determine if it was safe for a weekend visit with the granddaughter’s half-siblings. The decision to affirm this case provides precedent that threatens visitation and family harmony among mixed-family situations. If a parent, guardian, or custodian does not affirmatively inspect the premises of the host home, then the parent, guardian, or custodian should or could reasonably withhold consent for siblings to visit one another for fear of losing custody to DHS for conditions totally out of his or her control. This could only foster the breakdown of family relationships. The same would be true for a weekend sleepover at a friend’s house. Are we going to invite DHS to take children away from the parent, guardian, or custodian if DHS is called to a friend’s host home? Does the parent, guardian, or custodian have to affirmatively inspect the friend’s home with the potential penalty for noninspection being DHS' intervention and foster care for his or her children? The same DHS whirlwind could play out just the same. This portends to be a slippery slope.